Michael P. **MALAMPHY** and Enrique **Miles, Appellants,**

v.

**REAL-TEX ENTERPRISES, INC., et al., Appellees.**

**No. 74–2050.**

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1975.

Decided Oct. 20, 1975.

Edward DeV Bunn, (Thomas W. Ullrich, on brief), for appellants.

J. Howe Brown, Alexandria, Va. (Boothe, Prichard & Dudley, Alexandria, Va., on brief), for Edward L. Baker, Jr.

Gary W. Lonergan, Alexandria, Va. (Gant Redmon, Redmon & Stanton, Alexandria, Va., on brief), for Charles S. Shaw and Shaw Real Estate, Inc.

James I. Burkhardt, Alexandria, Va., on brief for George Nebel Associates and George Nebel, Sr.

Michael Lowenberg, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., Andrew Colclough, and Adams, Porter, Radigan & Mays, Arlington, Va., on brief for John H. Niland.

Herbert S. Rosenblum, Alexandria, Va., on brief for William N. Bagley.

Robert S. Travis, Cantey, Hanger, Gooch, Cravens & Munn, Fort Worth, Tex., on brief for Alan M. Weiss.

Before ALDRICH, Senior Circuit Judge,* and BUTZNER and RUSSELL, Circuit Judges.

PER CURIAM:

Michael P. Malamphy and Enrique Miles, whose similar complaints to recover sums they had invested in a real estate venture were consolidated for trial, appeal from judgments entered on jury verdicts that exonerated Real-Tex Enterprises, Inc., the firm's officers, and Virginia sales representatives from liability under federal and state securities laws.[1] The only assignment of error meriting discussion is the submission of the defense of *in pari delicto* to the jury. We find no cause for reversal in this ruling of the court.

Real-Tex subdivided and developed land in Texas. Throughout its short existence, the company was severely undercapitalized. To improve its cash position, it undertook to boost sales by offering repurchase option agreements, guaranteeing returns to the investor of at least 15 percent in one year. Before Malamphy and Miles became involved, Real-Tex consented to a decree, obtained by the Securities and Exchange Commission, ruling that these option contracts were securities and forbidding further sales without a registration statement. Despite this injunction, Real-Tex continued to sell lots with options until it was placed in receivership on petition of the S.E.C. The firm is now bankrupt.

In response to newspaper advertisements for salesmen, Malamphy and Miles, licensed real estate brokers, obtained positions with Virginia realtors who were promoting the sale of lots in a Real-Tex industrial park near Dallas, Texas. Both men purchased lots, simultaneously receiving a guarantee that Real-Tex would repurchase the property at a price that would provide them a

---

* Of the First Circuit, sitting by designation.

1. The jury was instructed on appellants' claims under the Securities Act of 1933 (15 U.S.C. §§ 77e, 77l, 77o), the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78j, 78r, 78t, and Rule 10b–5 [17 C.F.R. 240.10b–5]), and the Virginia Securities Act (Va.Code Ann. §§ 13.1–502, –504(a), –507, –522).

 The district court refused to instruct the jury on alleged violations of the Consumer Credit Protection Act (15 U.S.C. § 1638), the Interstate Land Sales Full Disclosure Act (15 U.S.C. §§ 1703, 1709), the Texas Securities Act (Tex. Rev.Civ.Stat.Ann. arts. 581-7, –12, –23, subd. B, –33), the Virginia corporation laws (Va. Code Ann. § 13.1–106), the Virginia usury law (Va.Code Ann. § 6.1–319), and common law principles of breach of contract, fraud, and misrepresentation.

substantial profit. They earned commissions on their own purchases which were credited against the price of the lots they bought.

Malamphy used his knowledge and experience as a real estate broker to study the Real-Tex proposition before accepting employment. His activity as a salesman was not incidental to his own purchase. On the contrary, his primary interest in the venture arose from his expectation of large commissions, and he purchased lots to enhance his ability to convince others to buy. He solicited hundreds of people and made several sales. For a short time, he was manager of a branch office and participated in the commissions earned by other salesmen.

Before Miles started to work as a salesman, he examined the S.E.C.'s file on Real-Tex which contained a copy of the consent decree. Since he had passed an examination in securities law and qualified as a registered representative, the jury was not obliged to accept his explanation that he did not understand the injunction. Although his sales efforts were unsuccessful, he solicited a number of individuals and attempted to negotiate a bulk sale of lots for approximately $10,000,000 to a Pennsylvania cement company.

■ To determine whether the court properly submitted the issue of *in pari delicto* to the jury, all conflicts in the evidence and reasonable inferences to be drawn from the facts must be resolved in favor of the defendants. Viewed in this light, the record discloses that Malamphy and Miles knowingly used their advantageous positions as licensed brokers to foist on the public fraudulent contracts for the purchase of lots. Federal securities laws enacted to avoid frauds must be construed flexibly to achieve their remedial purposes. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Thus, the doctrine of *in pari delicto* does not bar recovery by a defrauded purchaser of a security who naively urges others to invest. *Can-Am Petroleum Co. v. Beck,* 331 F.2d 371 (10th Cir. 1964). Nevertheless, the doctrine remains a defense against claims asserted by culpable participants, such as Malamphy and Miles, in an enterprise that violates the Act. *Cf. James v. DuBreuil,* 500 F.2d 155 (5th Cir. 1974); *Kuehnert v. Texstar Corp.,* 412 F.2d 700 (5th Cir. 1969); VI Loss, Securities Regulation 3828–29 (1969); Note, Securities Regulation, 1969 Duke L.J. 832.[2] We conclude, therefore, that both the facts and the law warranted the trial court's submission to the jury of the defense of *in pari delicto.*

We have considered the other issues raised by Malamphy and Miles and find no reversible error. The judgment is affirmed.

---

2. The appellants do not suggest that the state securities laws demand a more restrictive application of the doctrine than do the Securities Acts of 1933 and 1934.