945 F.2d 853
 FEDERAL DEPOSIT INSURANCE CORPORATION as Manager of the
FSLIC Resolution Fund, and as Receiver for Vernon
Savings and Loan Association, FSA,
Plaintiff-Appellee,
v.
L.L. CLAYCOMB, Defendant,
SHWC, Inc., J.W. Heister, D.M. Wilson and E.L. Swanson,
Defendants-Appellants.
 No. 90-1709.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 23, 1991.
Rehearing Denied Dec. 6, 1991.
 
 1
 Camille R. McLeod, Mark E. MacDonald, Johnson & Gibbs, Dallas, Tex., for Hiester, Swanson and Wilson.
 
 
 2
 Christopher M. Weil, Anthony A. Petrocchi, Dallas, Tex., for SHWC, Inc.
 
 
 3
 Joe Horlen, Hugh D. Spears, Neil M. Sunkin, Arter & Hudden, Dallas, Tex., for FDIC as receiver of Vernon Sav.
 
 
 4
 J. Scott Watson, FDIC, Washington, D.C., for FDIC.
 
 
 5
 Appeal from the United States District Court for the Northern District of Texas.
 
 
 6
 Before KING and DUHE, Circuit Judges, and SCHWARTZ, District Judge.[1]
 
 CHARLES SCHWARTZ, Jr., District Judge:
 
 7
 Defendants, SHWC, Inc., D.M. Wilson and E.L. Swanson [hereinafter referred to collectively as "SHWC"] appeal from a $2,359,891.28 judgment[2] against them, jointly and severally, in favor of the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Vernon Savings and Loan Association, FSA. SHWC argues on appeal that there exist material issues of fact concerning defendants' claim of usury and whether the loan documents at issue demonstrated the elements of partnership or joint venture under Texas law. SHWC further claims the district court erred in the calculation of the deficiency awarded to the FDIC. Finally, SHWC contends notwithstanding FIRREA amendments, that the district court did not have jurisdiction and should have dismissed or remanded the case.
 
 
 8
 We disagree with appellants SHWC's assignments of error and hold that the district court correctly applied Texas law and its grant of summary judgment was proper. Accordingly, the Court affirms.
 
 
 9
 I. Factual Background and Prior Proceedings.
 
 
 10
 On April 18, 1984, SHWC executed Deed of Trust Notes payable to Vernon Savings and Loan Association ("Old Vernon"): (1) the First Note was in the principal amount of $10 million; and (2) the Second Note was in the principal amount of $1.25 million.[3] Each of the Notes provided the following limitation of liability:
 
 
 11
 Limitation of Liability. Notwithstanding anything in this Note to the contrary, Maker shall have no personal or corporate liability for the payment of principal, interest or other amounts related to this Note which exceeds, in the aggregate, one-half the total of all such amounts which are outstanding from time to time.
 
 
 12
 The individual defendants guaranteed payment under both Notes to Old Vernon, likewise limiting their liability to one-half the total amount outstanding. Each Note was secured by a separate deed of trust on certain Dallas property. Neither the Notes, nor the unconditional guarantees contained any express language reflecting an agreement between SHWC and Old Vernon either to share in the losses on the project or that Old Vernon assume any liability on account of SHWC. Moreover, such sharing of losses and borrower's liability was expressly disavowed.
 
 
 13
 As part of the loan transaction, SHWC granted to Old Vernon a 50% profits interest in the Dallas property. The Profits Assignment provides at § 4.03:
 
 
 14
 No Member or Partner. By its acceptance of this Profits Assignment, Assignee does not become a member or a partner of or with Assignor. Consequently, in no event shall Assignee be liable for any of the debts, obligations or liabilities of Assignor or of its partners as a result of the execution of this Profits Assignment and in no event shall Assignee be liable for any contributions to Assignor. Assignee's only interest in Assignor shall be Assignee's right to receive interests granted to Assignee and assigned under this Profit Agreement. [emphasis supplied].
 
 
 15
 Essentially, the foregoing provision expressly disavows the existence of any partnership between the parties thereto, as well as any sharing of losses or liability of the SHWC or its partners.
 
 
 16
 Section 4.15 of the Loan Agreement itself states in pertinent part:
 
 
 17
 4.15 No Liability of Lender. Lender shall have no liability, obligation, or responsibility whatsoever with respect to the construction of Improvements except to advance the Loan and the Borrower's Deposit pursuant to this Loan Agreement....
 
 
 18
 The unambiguous import of the foregoing language contained in the Loan Agreement is that Old Vernon undertook no obligation, liability or responsibility, whatsoever, with respect to the Dallas property which SHWC borrowed funds to develop. The corollary, that Old Vernon solely undertook the obligation to loan funds to SHWC, is further patent.
 
 
 19
 The language of the guaranty agreement further evidences the debtor-creditor relationship as between SHWC and Old Vernon, to wit:
 
 
 20
 Guarantor unconditionally and irrevocably and absolutely, jointly and severally, guarantees to 'Lender' payment, among other things, of the sums advanced under the Loan Agreement.
 
 
 21
 Unquestionably, the guarantors were, from the outset, personally liable for 50% of the loan.
 
 
 22
 The terms of both Notes provided that principal and accrued interest was due and payable on April 18, 1986. SHWC defaulted on the payment of both Notes. On December 7, 1986, original plaintiff Vernon Savings and Loan Association ("Old Vernon")[4] filed suit in Texas state court against defendants L.L. Claycomb[5], J.W. Heister, D.M. Wilson, L.E. Swanson ("guarantors"), and SHWC, Inc. ("SHWC"), on two deed of trust notes from SHWC to Old Vernon. The four individual defendants guaranteed the notes. During the pendency of the state court proceedings Old Vernon was declared insolvent and the Receiver FSLIC transferred its assets to Vernon Savings and Loan Association, FSA ("Vernon, FSA"), a federally chartered savings and loan.
 
 
 23
 On April 14, 1987, pursuant to instructions from Vernon, FSA, then duly appointed substitute trustee under the First Lien Deed of Trust posted the Dallas property for a trustee's sale. On May 5, 1987, the Substitute Trustee Sale of the Dallas Property was conducted. The proceeds from that sale were $8,200,000.00.
 
 
 24
 On December 16, 1987, FSLIC appointed by the Federal Home Loan Bank Board substituted as Receiver of Vernon, FSA and removed the case to United States District Court for the Northern District of Texas. By virtue of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), the FSLIC was abolished and all of the assets of the FSLIC as Receiver for Vernon, FSA were transferred to FDIC. On October 30, 1989, FDIC was substituted as party plaintiff.
 
 
 25
 On January 3, 1989, FDIC filed its Motion for Summary Judgment along with supporting documents and briefs. SHWC raised affirmative defenses, counterclaims, and claims of offset, to wit: failure of consideration, usury, breach of contract, fraud, misrepresentation and promissory estoppel. On June 29, 1989, the district court denied the FDIC's Motion for Summary Judgment.[6]
 
 
 26
 On January 30, 1990, the FDIC moved for reconsideration of the district court's prior ruling, and filed its Second Motion for Summary Judgment, asserting that the D'Oench, Duhme and federal holder-in-due-course ["HIDC"] doctrines precluded partnership/joint venture and usury findings, and/or alternatively, that state law barred those defenses. On April 18, 1990, the district court by Memorandum Opinion and Order granted FDIC's Second Motion for Summary Judgment, holding SHWC's defenses barred as a matter of state law. Judgment was entered on May 29, 1990 against SHWC and the individual guarantors.[7]
 
 
 27
 The district court reaffirmed its earlier ruling that the FDIC established its right to recover, under the express terms of the loan documents. Having disposed of the defense of partnership on the basis of Texas law,[8] the district court addressed the defense of usury under state law.
 
 
 28
 Relying on Woodcrest Assocs., Ltd. v. Commonwealth Mortgage Corp., 775 S.W.2d 434, 439 (Tex.App.1989), writs denied, the district court held that the usury savings clause at issue in the present case eliminated the claim of usury, noting that the Texas Supreme Court in Woodcrest construed a savings clause essentially identical to that in the case at bar and so held.
 
 
 29
 It is from this summary judgment that defendants SHWC, Swanson, Wilson and Heister appeal. FDIC has cross-appealed and contends that it is unnecessary to examine the state law issues because SHWC's defenses and claims are barred by the federal common law D'Oench, Duhme doctrine and by 12 U.S.C. § 1823(e), and suggests in the alternative affirmance of the district court's decision on the basis of Texas law.
 
 
 30
 II. Discussion.
 
 
 31
 A. Jurisdiction.
 
 
 32
 At the outset some discussion of the jurisdictional issue raised on appeal appears to be in order. SHWC has raised the question of the authority of the FDIC to act in its capacity as receiver in this particular proceeding. The gravamen of SHWC's argument is that there exists no express provision in FIRREA which allows the FDIC to succeed the FSLIC as receiver for institutions placed into receivership prior to January 1, 1989.
 
 
 33
 The FSLIC was abolished pursuant to FIRREA's revamping the savings and loan regulatory structure.[9] In Carrollton-Farmers Branch v. Johnson & Cravens, 889 F.2d 571, 572-73 (5th Cir.1989), the court explained that new section 407 of FIRREA expands federal jurisdiction to all suits to which the FDIC is a party, with one exception, the instance where FDIC was appointed, as receiver, exclusively by state authorities.[10] Here, as in Carrollton-Farmers, supra, the FSLIC was appointed, as receiver, by the Federal Home Loan Bank Board, federal authority. Hence, the exception, which is codified at 12 U.S.C. § 1819(b)(2)(D)(i), does not apply to this case, and section 1819(b)(2)(A) confers original jurisdiction, while section 1819(b)(2)(B) provides removal jurisdiction.[11]
 
 
 34
 Moreover, section 401(h) of FIRREA specifically provides that the resolutions creating the receivership for which the FSLIC was receiver remain in effect.[12] Section 401(i) directs the Chairperson of the FDIC, inter alia, to identify all orders relating to the conduct of conservatorships and receiverships "in accordance with the allocation of authority between them under [FIRREA] and amendments made by [FIRREA]...." The FDIC is specifically named as one of the entities with authority to enforce orders pertaining to pre-FIRREA receiverships.
 
 
 35
 We agree with appellee's argument to the effect that these provisions clearly express the intent on the part of Congress to grant FDIC authority to succeed to the FSLIC with respect to receiverships appointed prior to January 1, 1989. Finally, section 401(f)(2) evidences the intent of Congress that pre-FIRREA receiverships not be abolished and provides in pertinent part that the abolition of the FSLIC does not abate lawsuits filed by or against the FSLIC, "except that the appropriate successor to the interests of the [FSLIC] shall be substituted ... as a party to any such action or proceeding."
 
 
 36
 The result urged by SHWC runs directly contrary to the language in Section 401(f)(2). Borrowing language from the court's decision in FDIC v. Gillard, 740 F.Supp. 427, 428 (N.D.Tex.1990), "under [appellants'] theory, there would be no successor to the FSLIC for institutions placed in receivership prior to the enactment of FIRREA. The court finds no indication in the statute that Congress intended to abolish all pre-FIRREA receiverships. Congress' intent was apparently otherwise."
 
 
 37
 On the record before this Court, and in light of FIRREA, we see nothing to divest the district court of jurisdiction.
 
 
 38
 B. Partnership/Joint Venture Under Texas State Law.
 
 
 39
 Under Texas law, a partnership is an association of two or more persons to carry on as co-owners of a business for profit.[13] The essential elements of either a joint venture or a partnership agreement, whether implied or express, are: (1) a community of interest in the venture/partnership; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise.[14] Where any one of these elements is absent, no joint venture or partnership exists.[15]
 
 
 40
 The profits assignment in the case at bar expressly disavows any intent on the part of the maker to become a partner with SHWC. The district court rejected SHWC's assertion that the 50% limitation of liability cap evidences an agreement to share in the losses.
 
 
 41
 The absence of an express provision obligating the parties to share in the losses indicates that a partnership was not intended.[16] As previously mentioned, there are several provisions which specifically disclaim the existence of any partnership agreement. In addition to the disclaimer in the Profits Assignment, Section 4.15 of the Loan Agreement states in pertinent part:
 
 
 42
 4.15 No Liability of Lender. Lender shall have no liability, obligation, or responsibility whatsoever with respect to the construction of the Improvements except the Loan and the Borrower's Deposit pursuant to this Loan Agreement....
 
 
 43
 Unquestionably, the parties intent was that Old Vernon undertook no obligation, liability or responsibility with respect to the Dallas property, which SHWC borrowed money to develop, other than to loan money to SHWC.
 
 
 44
 The Texas Supreme Court case cited in the district court's opinion, Coastal Plains Dev. Corp. v. Micrea, Inc., 572 S.W.2d 285, 288 (Tex.1978), sets forth the controlling law. In this analogous case, the Texas Supreme Court determined that the expressed intent of the parties not to create a joint venture, coupled with the absence of a provision for the sharing of losses, precluded a finding that the parties were joint venturers. Certainly, if an express provision disavowing any joint venture coupled with no express provision for the sharing of losses precludes a finding of joint venture under Texas law, then an express provision disavowing the existence of a partnership coupled an express provision disavowing the sharing of losses and liability precludes a finding of either partnership or joint venture, as a matter of law.
 
 
 45
 SHWC further suggests that its claim of "fiduciary duty"[17] arises by operation of Texas law from the alleged "partnership agreement." As previously explained the essential predicate of partnership cannot be inferred from the loan documents before the court, therefore any fiduciary duty arising therefrom is not within the realm of possibility under Texas law. The borrower-lender relationship, with which we are here concerned, does not give rise to a "fiduciary" or "special relationship."
 
 
 46
 The loan documents at issue expressly disclaim partnership, sharing of losses and liability of SHWC on the part of Old Vernon. SHWC's argument to the effect that the 50% cap on borrower's liability is tantamount to an agreement to share losses is specious in light of express provision to the contrary in the profit assignment. This Court further agrees with the reasoning of the district court that, "the 50% cap represents a bargained for limitation of losses to [SHWC], not an agreement that Old Vernon would share in any losses."[18]
 
 
 47
 Thus, under well-settled Texas law there was no joint venture or partnership in existence between Old Vernon and SHWC. Having failed to establish one of the essential elements of joint venture/partnership as a matter of law, SHWC cannot establish any recognizable legal defense in regard to partnership or joint venture.[19]
 
 
 48
 For all of the foregoing reasons, we conclude the district court properly determined, as a matter of law, SHWC has no defense based on either joint venture, partnership or fiduciary duty arising therefrom against the FDIC.
 
 
 49
 C. Usury under Texas Law.
 
 
 50
 In general, Texas courts recognize the validity of usury savings clauses and enforce those clauses to defeat claims of usury.[20] To determine the effect of a usury savings clause, the court must consider the terms of the savings clause as a whole in light of the circumstances surrounding the transaction.[21] The court is further required to give effect to the objective intention of the parties as reflected by the written documents associated with the transaction and must presume the parties intended to obey the law unless a contrary intention clearly manifests itself.[22] The court must, if reasonably possible, give effect to the savings clause and interpret the savings clause so as to deny the right to usurious interest.[23]
 
 
 51
 The district court correctly held the usury savings clauses set forth in the loan documents defeat any usury defense under Texas law. In Woodcrest, supra, the court construed a usury savings clause similar to those at issue in the present case[24] and held that provision eradicated any usurious interest claim, stating as follows:
 
 
 52
 Interpreting the demand letters as a whole in light of the underlying loan documents, we construe Commonwealth's demand as being automatically constricted within the bounds of the law by virtue of the savings clauses in the underlying documents thereby eliminating any contention that illegal interest was claimed.[25]
 
 
 53
 The only pertinent intention here evident in all of the loan documents before this Court is that of the parties to avoid a usurious transaction. That intention is presumed to exist absent clear and contrary evidence.[26] SHWC does not contend that the note is facially usurious or that the transaction is usurious even if the savings clause is applied. Here, as in Woodcrest, supra, the loan documents manifest the intent "to structure the entire transaction so as to avoid ... usurious interest."[27]
 
 
 54
 Moreover, under the rationale of City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981),[28] and inasmuch as the FDIC was created to serve the public interest, the usury claim which is punitive in nature under Texas law,[29] cannot be asserted against the FDIC as such application could have no deterrent effect, and would only serve to punish innocent creditors of the failed institution by diminishing available assets.
 
 
 55
 This rule that a claim for punitive damages cannot be asserted against institutions created to serve the public interest has been applied to receivers for insolvent banks.[30]
 
 
 56
 For all of the foregoing reasons, we conclude the district court properly determined, as a matter of law, SHWC has no claim of usury against the FDIC.[31]
 
 
 57
 D. Calculation of the Award to FDIC.
 
 
 58
 SHWC contends in that the district court erred in calculating the award, arguing that the temporal base for calculation of any deficiency is date of demand. Its argument ignores both the facts that each of the guarantors waived demand and that under the terms of the guaranties each remain liable for "one-half the total of all such amounts which are outstanding from time to time." Moreover, Paragraph 14 of both Notes have the same limitation to the effect that the Maker shall have no liability thereunder exceeding 50% of the total of all such amounts outstanding from time to time.[32]
 
 
 59
 By affidavit of Steven M. Shockett, the FDIC established that a post foreclosure deficiency of $2,292,976.56 remained on Note 1 [i.e. the $10 million Note] as of May 4, 1987 and no amounts were credited to amounts owed on Note 2 [i.e. the $1.25 million Note], because the price received at the foreclosure was substantially less than the amounts owing on Note 1. The district court accurately determined based on the Shockett's affidavit and the documents attached thereto, that as of May 4, 1987, SHWC and the individual guarantors remained liable for one-half the remaining indebtedness on Note 1 [$2,292,976.56] and one-half of the unpaid principal on Note 2 [$1,256,914.84], plus accrued interest in the amount of $241,801.84, amounts which were and as the trial court set forth still are outstanding.
 
 
 60
 III. CONCLUSION.
 
 
 61
 For all of the above and foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Senior District Judge of the Eastern District of Louisiana, sitting by designation
 
 
 [2]
 The May 29th, 1991 judgment of the district court further adjudges accrued interest due from and including May 1, 1990 until the date of judgment with a per diem rate of $639.18, attorneys' fees and costs in the amount of $39,369.05, and post-judgment interest on said sums at the legal rate of 8.70% per annum
 
 
 [3]
 The loan proceeds were used to purchase an existing apartment complex in Dallas, Texas, which was to be revamped into retirement condominiums. SHWC planned to market the project as Meadowstone Condominiums
 
 
 [4]
 A state-chartered savings and loan association
 
 
 [5]
 Claycomb is not a party to this appeal and did not appeal the judgment
 
 
 [6]
 In Memorandum Opinion and Order entered June 29, 1989, notwithstanding and noting disagreement with "much of the defendants' opposition", Judge Fitzwater denied summary judgment for the stated reason that at that time he was unable to determine the legal relationship of the parties based on the profits assignment. The district court was unable to determine whether the profits assignment was or was not a part of the bank's records, and concomitantly, whether the partnership defense was barred pursuant to the D'Oench- Duhme doctrine as an undisclosed/secret agreement. However, the district court concluded therein that mover had established its right to judgment equal to one-half of the $3,549,871.30, plus interest, attorney's fees and costs
 
 
 [7]
 On June 11, 1990, appellants filed a Motion for New Trial which was denied by the district court's order entered August 1, 1990
 
 
 [8]
 In its Memorandum Opinion and Order dated April 18, 1990, the district court stated:
 The unmistakable intent of the parties to the transactions at issue was to create a relationship whereby Old Vernon would provide loans to SHWC and SHWC would agree to repay those loans with interest. Additionally, as consideration for the making of the loans, SHWC agreed to pay Old Vernon a portion of the profits generated by the property developed with the borrowings. The loan documents at issue do not refer to or evidence in any way the existence of a partnership. Nor do the documents contain any reference to an agreement of the parties to share losses. In an analogous situation, the Texas Supreme Court determined the expressed intention of the parties not to create a joint venture coupled with the absence of a provision for the sharing of losses precluded a finding that the parties were joint venturers. The court reaches the same conclusion with respect to the existence of a partnership.
 
 
 [9]
 FIRREA, § 401(a), 103 Stat. 354, codified at 12 U.S.C. § 1437
 
 
 [10]
 See also, Triland Holdings & Co. v. Sunbelt Service Corp., 884 F.2d 205, 206-207 (5th Cir.1989); and Sunbelt Savings, FSA v. Bent Trail Phase IV Joint Venture, 907 F.2d 1569, 1571 (5th Cir.1990) [held the relevant jurisdictional provision of FIRREA applicable to previously pending cases]
 
 
 [11]
 Section 407 of FIRREA repeals § 1730(k)(1) and Section 209 of FIRREA amends 12 U.S.C. § 1819, now the relevant jurisdictional provision, which as amended provides:
 (2) Federal Court Jurisdiction.
 (A) In General.--Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
 (B) Removal.--Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit or proceeding from a State court to the appropriate United States district court.
 Under subparagraph (D) of this provision, the federal courts lack jurisdiction only in those cases in which the Corporation was appointed as receiver exclusively by State authorities. In the case on appeal, as previously mentioned the FHLBB, a federal entity, appointed FSLIC as receiver. See e.g., Triland Holdings & Co. v. Sunbelt Service Corp., 884 F.2d 205, 207 (5th Cir.1989).
 
 
 [12]
 Section 401 of FIRREA provides: "[A]ll orders, resolutions, determinations, and regulations, which--(1) have been issued, made, prescribed, or allowed to become effective by the [FSLIC] or the [FHLBB] (including orders, resolutions, determinations, and regulations which relate to the conduct of conservatorships and receiverships), or by a court of competent jurisdiction, in the performance of functions transferred by this Act [Pub.L. 101-73]; and (2) are in effect on the date this Act takes effect [Aug. 9, 1989], shall continue in effect according to the terms of such orders, resolutions, determinations, and regulations and shall be enforceable against the [DOTS], the [FDIC], the [FHFB], or the [RTC], as the case may be, until modified, terminated, set aside, or superseded in accordance with applicable law by the [DOTS], the [FDIC], the [FHFB], or the [RTC], as the case may be, by any competent court of jurisdiction, or by operation of law."
 
 
 [13]
 Tex.Rev.Civ.Stat.Ann. art. 6132b § 6(1) (Vernon 1970)
 
 
 [14]
 See, e.g., United States v. $47,875.00 in U.S. Currency, 746 F.2d 291, 294 (5th Cir.1984); Ayco Development Corp. v. G.E.T. Service Co., 616 S.W.2d 184, 186 (Tex.1981); Coastal Plains Development Corp. v. Micrea, Inc., 572 S.W.2d 285, 287 (Tex.1978); and Carlyle Joint Venture v. H.B. Zachry Co., 802 S.W.2d 814, 816 n. 2 (Tex.App.1990) [stating that joint venture and partnership are so similar in nature that they are substantially governed by the same rules]
 
 
 [15]
 United States v. $47,875.00 in U.S. Currency, 746 F.2d at 294
 
 
 [16]
 Gutierrez v. Yancey, 650 S.W.2d 169, 172 (Tex.App.1983)
 
 
 [17]
 In English v. Fischer, 660 S.W.2d 521, 522 (Tex.1983), the Texas Supreme Court rejected the contention that an implied duty of good faith and fair dealing exists in every contract. Such duty must rather be expressly provided or it may be recognized where a "special relationship" is found to exist between the parties. Id. at 524-25 n. 4. It is further well-settled under Texas law that the borrower-lender relationship does not give rise to such a duty nor will mere subjective trust alone create a fiduciary relationship. See, e.g., Lovell v. Western National Life Insurance, 754 S.W.2d 298, 302-03 (Tex.App.1988, writ denied ) [mortgagor-mortgagee relationship does not create a "special relationship"]; Consolidate Bearing & Supply Co. v. First National Bank, 720 S.W.2d 647, 650 (Tex.App.1986, no writ ); and Thomson v. Norton, 604 S.W.2d 473, 475-476 (Tex.App.1980, no writ ) [held that the fact that bank officer both found and showed the land to plaintiff which could be purchased for purposes of tax breaks did not raise the issue of confidential relationship]
 
 
 [18]
 "FDIC vs. L.L. Claycomb, et al" CA No. 3-87-2955-D, Memorandum Opinion and Order entered April 18, 1990, at p. 5 n. 4
 
 
 [19]
 Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)
 
 
 [20]
 Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 1050 (Tex.1937); Woodcrest Assoc. Ltd. v. Commonwealth Mortgage Corp., 775 S.W.2d 434, 437 (Tex.App.1989, writ denied ), Conte v. Greater Houston Bank, 641 S.W.2d 411, 418 (Tex.App.1982, writ ref'd n.r.e.) [stating if a contract as a whole is susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality]. See also, In re Casbeer, 793 F.2d 1436, 1447 (5th Cir.1986); Mack v. Newton, 737 F.2d 1343, 1371 (5th Cir.1984), reh'g denied, en banc, 750 F.2d 69 (5th Cir.1984); Imperial Corp. v. Frenchman's Creek Corp., 453 F.2d 1338, 1344-45 (5th Cir.1972)
 
 
 [21]
 Woodcrest Assocs., Ltd. v. Commonwealth Mortgage Corp., 775 S.W.2d 434, 438 (Tex.App.1989), writ denied (Jan. 24, 1990) and reh'g of writ of error overruled (Feb. 28, 1990)
 
 
 [22]
 Id
 
 
 [23]
 Id
 
 
 [24]
 The pertinent provision here contained in paragraph 9 of both Notes reads as follows:
 
 
 [9]
 Controlling Agreement: All agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand or acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged, received, paid or agreed to be paid to Holder exceed interest computed at the Maximum Rate. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of interest computed at the Maximum Rate, the interest payable to Holder shall be reduced to interest computed at the Maximum Rate; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of interest computed at the Maximum Rate, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal hereof, such excess shall be refunded to the Maker. All interest paid or agreed to be paid to the Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period of payment in full of the principal (including the period of any renewal or extension hereof) so that the interest hereon for such full period shall not exceed interest computed at the Maximum Rate. This paragraph shall control all agreements between Maker and Holder
 Similar language is contained in the Loan Agreement at paragraphs 2.07 and 6.06, the First Lien Deed of Trust at paragraph 3.10, the Profits Assignment at paragraph 3.07, and the Second Lien Deed of Trust at paragraph 13.10.
 
 
 [25]
 775 S.W.2d at 439
 
 
 [26]
 Nevels, 102 S.W.2d at 1049-50
 
 
 [27]
 775 S.W.2d at 439
 
 
 [28]
 In City of Newport, supra, a claim for punitive damages was asserted against a municipality under Title 42, United States Code, § 823
 
 
 [29]
 Steves Sash & Door Co. v. Ceco Corp., 751 S.W.2d 473, 476 (Tex.1988) [Texas usury statute is penal in nature]; and Martinez v. Corpus Christi Area Teacher Credit Union, 758 S.W.2d 946, 949 (Tex.App.1988, cert. denied ) [to the same effect]
 
 
 [30]
 See, e.g., FSLIC v. T.F. Stone--Liberty Land Associates, 787 S.W.2d 475, 492 (Tex.App.1990) [agreeing with the FSLIC's arguments and recognizing other courts, which have drawn on the policy reasons articulated in D'Oench to fashion a federal common law rule granting a receiver immunity from usury and punitive damages]; Professional Asset Management, Inc. v. Penn Square Bank, N.A., 566 F.Supp. 134, 136 (W.D.Okla.1983) [held the FDIC appointed receiver for the failed bank was not liable for punitive damages]. See also, Hershey v. Anderson, 127 F.2d 884 (6th Cir.1942) [holding a penal statute should not be construed to bring about the anomalous result that penalties will not be paid by the individuals against whom it is directed, but rather, paid by the persons whose benefit the receivership was imposed]; and FDIC v. Aroneck, 509 F.Supp. 553, 557 (D.S.C.1979), aff'd in pertinent part and vacated in part, 643 F.2d 164 (4th Cir.1981) [citing Hershey, supra, and holding that usury cannot be asserted against the FDIC]
 
 
 [31]
 This Court's foregoing affirmance of the district court's decision on the basis of Texas law, renders any consideration of the D'Oench doctrine and its bar against consideration of unrecorded agreements unnecessary
 
 
 [32]
 As the district court aptly instructs in its Memorandum Opinion and Order entered June 29, 1989, "these provisions limit liability to one-half of the indebtedness outstanding under each note for as long as any indebtedness is outstanding." In other words, that the foreclosure purchase price of collateral exceeded one-half of the amount owing on the notes does not eradicate the debt, but rather reduces guarantor's obligation to one-half the remaining indebtedness