**FIBERGRATE CORP.**

v.

**RESEARCH–COTTRELL, INC.**

No. CA 3–79–0365–G.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 28, 1979.

Raymond D. Noah & Associates, Richardson, Tex., Lancaster Smith, Harvey L. Davis, Dallas, Tex., for plaintiff.

Calhoun & Spillman by Mark Alan Calhoun, Roy L. Stacy, Dallas, Tex., for defendant.

## ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

This case revolves around certain services and materials plaintiff Fibergrate Corporation allegedly provided defendant Research-Cottrell and a cancellation of an order defendant placed with plaintiff. Specifically, plaintiff asserts (1) that defendant, by purchase orders defendant issued, ordered and received plaintiff's services and materials, valued at $124,187.17, as set out in certain invoices and (2) that in another transaction, defendant ordered and insured plaintiff's services, but that prior to completion of manufacture of items ordered, defendants cancelled the order, thereby incurring a cancellation charge of $45,449.10. Plaintiff, alleging that it had not received either sum, initially sought judgment in state court in the amount of $169,633.47 (the total of $124,187.17 and $45,449.10), together with interest thereon at the rate of 6% per annum from June 7, 1978, to date of judgment and at 9% per annum thereafter until paid, and costs of suit. In the amended complaint, filed after removal to this court, plaintiff also sought punitive damages and attorney's fees.

Defendant Research-Cottrell has filed a motion for summary judgment. Research-Cottrell argues that Texas law, as decided in *Houston Sash and Door, Inc. v. Heaner*, 577 S.W.2d 217 (Tex.1979) is that the charging of interest on an "open account" during the calendar year in which the account is made is in excess of twice that permitted by

Article 5069–1.03,[1] Tex.Rev.Civ.Stat. (Vernon), *i. e.*, in excess of twice zero, and that this would subject the creditor to the penalty provisions of Article 5069–1.06.[2] Defendant argues that since plaintiff Fibergrate was not entitled to any interest on what defendant alleges was an "open account" until after January 1, 1979, its prayer for interest in this suit from June 7, 1978, constitutes a violation of Article 5069–1.03, subjecting plaintiff to the penalty provisions of Article 5069–1.06. The defendant urges that plaintiff is thus subject to forfeiture of twice the amount of interest charged, all principal, interest, and other charges and reasonable attorneys' fees set by the court, and as a result plaintiff does not have the right to recover the principal amount sought.

In essence, Research-Cottrell urges that because the plaintiff in its prayer for relief sought too much interest, it is entitled to summary judgment. Fibergrate replies that assuming that too much interest was prayed for, to grant a summary judgment for reasons suggested would violate fundamental concepts of procedural fairness. Fibergrate points out that plaintiffs often seek amounts larger than that which they can reasonably expect or may be entitled to by law, and argues that it should not be denied all relief simply because it may have similarly prayed for more than it is entitled to.

### The Usury Statute

■ Since Article 5069–1.06 is a usury statute and is penal in nature, it should be strictly construed. *See Home Savings Association v. Crow,* 514 S.W.2d 160, 165 (Tex. Civ.App.—Dallas 1974), *aff'd* 522 S.W.2d 457 (Tex.1975). Aside from the court's uncertainty at this stage in the proceedings as to whether plaintiff's suit is indeed based on an "open account," this court finds that plaintiff's prayer for 6% interest ought not be construed as a "charge" of usurious interest.

Defendant has cited two cases under Article 5069–1.06 in support of its assertion that the prayer for allegedly proscribed interest itself constitutes a "charge" of usuri-

---

1. The Article 5069–1.03 in effect at the filing of the motion for summary judgment provided that:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made.

The provision currently in effect is somewhat less favorable to debtors than that in effect at the time of the filing of the motion. *See* 1979 Vernon's Tex.Sess. Law Serv. 1718. Effective August 27, 1979, it provides that:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

In this opinion, the court assumes that the applicable provision to be used here in determining whether there had been usury was the provision in effect at the time of the alleged illegality, not the new provision.

2. Article 5069–1.06 in effect at the filing of the motion for summary judgment provided that:

> (1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error.
> (2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

The statute currently in effect is slightly different. *See* 1979 Vernon's Tex.Sess. Law Serv. 604. The new provision does not apply to claims of forfeiture in litigation pending as of August 27, 1979.

ous interest, *Windhorst v. Adcock Pipe and Supply Co.*, 547 S.W.2d 260 (Tex.1977), and *Watson v. Cargill, Inc.*, 573 S.W.2d 35 (Tex. Civ.App.—Waco 1978, writ ref'd n.r.e.). In *Windhorst*, a retailer unilaterally imposed on a customer's open account a 1½% per month finance charge. The customer did not pay that imposed fee, and the customer sued for penalties under the usury laws. The court held that by unilaterally imposing that fee, the retailer "charged" more than 10% per annum, and was thus liable for penalties. Similarly, in *Watson*, the creditor had also himself assessed usurious interest against the debtor, and himself sought payment of both the principal and usurious interest from the debtor. *Watson v. Cargill, supra*, at 40, 43.

In the present instance, unlike *Windhorst* and *Watson*, the "creditor" did not ask the defendant to pay a principal amount and interest on that principal. Instead, the "creditor" here asked the debtor to only pay the principal. Upon the debtor's alleged refusal to pay such principal, Fibergrate sought to convince this court that the court should assess principal and interest against the debtor. A permissible construction of the statute is that a creditor seeking to recover interest as damages is not making a "charge" of interest. The interest claim is not rooted in a free contractual relationship between two private parties, but is an element of nonconsensual damages.

Defendant has cited cases under certain other usury statutes, Articles 5069–8.01 and 8.02, to support its assertion that the plaintiff's prayer here is a charge. The court's construction of the statutes here is the most natural one, especially in light of the admonition in *Home Savings* that usury statutes are to be construed narrowly. Moreover, construing a claim asserted only in a pleading filed in a law suit as an interest charge triggering the draconian penalties of usury would do little to serve any reasonable purpose of the statute. There is little risk of overreaching or coercion because the sum claimed would never be payable absent ju-

dicial approval. While not serving any valued purpose of the statute, this construction would disserve the legally valued principle that just debts ought to be paid. Finally, this proffered construction would exalt form over substance and attach a heavy penalty to a pleading error contrary to the policy of both the state and federal rules of procedure that amendments ought to be freely allowed to avoid injustice. This is so because the argument is not only that the pleading was a fatal "charge of interest" but once made could never be corrected by amendment. This court chooses to adopt the permissible reading of the statute that a claim for interest as damages is alone not a charge of interest within the meaning of the statute.

■ Even if we were to hold that a claim is such an interest charge, no claim was made. The demand for judgment is simply not considered part of the claim. Hence, "selection of an improper remedy in the demand will not be fatal to a party's pleading if the statement of his claim indicates that he may be entitled to relief of some other type." Wright, & Miller, *Federal Practice and Procedure : Civil* § 1255 (1969).

For the foregoing reasons stemming from rules of pleading and concepts of procedural fairness as well as reasons based on construction of statutory provisions, defendant's motion for summary judgment is DENIED.