IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
NO. 91-2248

FIRST SOUTH SAVINGS ASSOCIATION
and RESOLUTION TRUST CORPORATION,
as Conservator,

                                    Plaintiffs-Appellees,

                    versus

FIRST SOUTHERN PARTNERS, II, LTD,
                            Defendants,


COFFEE R. CONNER and
THE ESTATE OF JACK GAULDING,
Deceased,                           Defendants-Appellants.

_____

Appeal from the United District Court
for the Southern District of Texas

_____


Before REAVLEY, HIGGINBOTHAM and DeMOSS, Circuit Judges.

DeMoss, Circuit Judge:


On March 31, 1983, Coffee R. Conner and Jack Gaulding, ("Guarantors"), each executed separate guaranty agreements of a promissory note executed by First Southern Partners, II, Ltd., a Texas limited partnership (of which Conner and Gaulding were the general partners) payable to First Savings Association, Port Neches, Texas, in the amount of $2,790,000, (the "Note"), which was secured by a first mortgage lien on certain real property described in the Note. The specific language of the Guaranty agreements reads as follows:

> "Guarantor absolutely and unconditionally guarantees the prompt, complete, and full payment of all amounts due on the Note from the date hereof through the date a Certificate of Occupancy is issued by the City of Lubbock, Lubbock County, Texas, for all improvements to be constructed on the property more particularly described on Exhibit "B" attached hereto and made a part hereof for all purposes, from and after which date Guarantor's liabilities and obligations hereunder shall be limited to fifty per cent (50%) of the principal balance of the Note outstanding from time to time through the date of maturity, howsoever such maturity may occur,. . ."

First South Savings Association ("First South"), succeeded to all of the rights, title, and interest of the original payee of the Note including the rights under the Guaranty agreements. The development covered by the first lien Deed of Trust suffered the fate of so many other real estate developments in Texas with the result that First South foreclosed upon the property covered by the first lien Deed of Trust in April 1988, bidding $987,000 for the property which amount was credited against sums due and owing under the Note. A year later, First South suffered the fate of so many other lending institutions in Texas and the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as Conservator; and in June 1989 the FSLIC, as Conservator for First South, brought suit against the maker of the Note and Guarantors for the outstanding balance of principal and interest on the Note and another note which is not at issue in this Appeal.

After passage of the Financial Institution Reform Recovery and Enforcement Act of 1989, the Resolution Trust Corporation ("RTC"),

succeeded FSLIC as Conservator of First South, appropriate substitution of parties were made in the lawsuit and the assets of First South were placed in a newly created Federal Savings Association, which was simultaneously placed into conservatorship controlled by the RTC.

Guarantors answered and counterclaimed that First South and RTC had "charged usury" in certain letters and in the Original Complaint filed in this lawsuit, by demanding that the Guarantors each pay all of the principal and all of the interest on the Note when each had only guaranteed one-half of the principal and none of the interest. The dispute was submitted on summary judgment to the trial judge, who granted judgment to First South and the RTC against each of the Guarantors for fifty percent (50%) of the principal balance then outstanding. In his Opinion, the trial judge ruled, somewhat cryptically, against the Guarantors usury defense with the following language:

> "In Texas, the usury defense is available only to a maker of a note. The RTC is suing on the first note for collection from the guarantors. The defendants, as guarantors, may not raise usury as a defense."

We **affirm** the judgment of the trial court for the following reasons:

### A.   NO CHARGING OF INTEREST

The principle theory upon which Guarantors rely for their claim of usury is that certain language in the demand letters sent out by the Note holder, and in the Original Complaint, constituted the "charging of interest which is greater than the amount

**3**

authorized by this Sub-title" in violation of the provisions of Article 5069-1.06 (1) and (2) of the Texas Revised Civil Statutes.

Specifically the demand letter of March 9, 1989, contained the following language: "Coffee R. Conner and Jack Gaulding are guarantors of payment on the Notes and are jointly and severally liable for all amounts due thereon." Likewise, the Prayer for Relief in the Original Complaint, stated that plaintiffs were demanding judgment against "Defendants" (which included Coffee R. Conner and the Estate of Jack Gaulding, deceased) "jointly and severally" for the full amount of the principal balance of the Note and for pre-judgment interest on the Note at the highest rate allowed by law from the date of default to the date of judgment.

The two Guaranty agreements are clearly and unambiguously separate Guaranty agreements with no joint liability imposed on the two Guarantors. Likewise, under the clear language of each Guaranty, the liability of each guarantor was limited to "fifty percent (50%) of the outstanding balance of principal" after the Certificate of Occupancy had been delivered; and both parties to this proceeding have treated that condition as having occurred. Consequently the referenced statements in the demand letter of March 9, 1989, and in the Prayer For Relief in the Original Complaint were erroneous.

Although the note holder attempted to remedy these erroneous statements in a subsequent demand letter, and in an amended complaint, the Guarantors take the position that, once uttered, these erroneous statements were not retractable and constituted the

**4**

"charging of interest greater than the amount authorized" by Article 5069-1.01 <u>et</u> <u>seq.</u>, entitling Guarantors to recover the penalties and offsets contemplated by Article 5069-1.06.

However, the recent case of <u>George A. Fuller Company of Texas, Inc. v. Carpet Services, Inc.</u>, No. D-0791 _____ S.W.2d _____ decided by the Texas Supreme Court on January 29, 1992, clearly disposes of Guarantors' contention that "charging of usurious interest" can occur in pleadings.  In <u>Fuller</u>, the Texas Supreme Court held:

> a demand for prejudgment interest contained in a pleading does not make a pleader liable for statutory usury penalties if the pleading seeks the recovery of unlawful prejudgment interest.

Likewise, the Guarantors have not made a convincing case as to the "charging of usurious interest" by the language used in the demand letters in this case.  "Interest" is defined by Texas statute as "compensation allowed by law for the use or forbearance or detention of money . . . ."  Tex. Civ. Code Art. 5069-1.01(a).  A guarantor of a promissory note, however, does not receive such use, forbearance, or detention of money under a promissory note.  A demand made to the guarantor only for sums owed by the notemaker under the guaranteed note is, therefore, not a demand for interest. It is simply a demand for the undifferentiated sum of money defined in the guaranty agreement.

In this case, the noteholder clearly characterized the allegedly usurious amounts in the demand letters as amounts owed under the promissory notes.  These amounts were not compensation

5

for the <u>guarantors</u>' use, forbearance, or detention of money. Therefore, they could not be usurious interest under Texas law.

The principle case relied upon by Guarantors for their conclusion is <u>Houston Sash & Door Co., Inc. v. Heaner</u>, 577 S.W.2d 217 (Tex. 1979). In that case Heaner had executed a letter agreement guaranteeing payment of all sums owed by Bedford Corporation (of which he was chairman of the board) to Houston Sash & Door, Inc. In the same letter agreement Heaner also agreed to pay, "interest from the due date of any [Bedford] account to the date of payment at the rate of 12% per annum." The Texas Supreme Court held that the interest rate "contracted for" in the letter guarantee agreement was "greater than the amount authorized by this Subtitle"; and accordingly, <u>Houston Sash</u> was liable for the penalty prescribed in Article 5069-1.06(1). It was the "contracting for" language not the "charging" language of Article 5069-1.06 that was involved.

The critical distinction between the <u>Houston Sash</u> case and the case before this Court is that here the Guaranty agreement contains no separate interest agreement; and the obligation of the guarantor is simply to pay the sum of money defined in the Guaranty agreement. "It is a fundamental principle governing the law of usury that it must be founded on a loan or forbearance of money; if neither of these elements exist, there can be no usury." <u>Crow v. Home Savings Association of Dallas County</u>, 522 S.W.2d 457, 459 (Tex. 1975). Furthermore, while a guaranty agreement may

frequently be collateral to a loan or credit transaction, it is not the same thing as a loan or credit transaction; and absent a separate interest provision in the guaranty agreement, as in Houston Sash, an erroneous claim as to the amount of money owed under a guaranty agreement is simply that, and not a "charging of interest greater than the amount authorized by this Subtitle" within the contemplation of Article 5069-1.06.

B.  **SAVINGS CLAUSE**

Both the first lien Note and the Guaranty agreements contain usury savings clauses.  The pertinent language from the Gu aranty agreements is:

> "...and if, from any circumstances whatsoever, fulfillment of any provision of this Guaranty at the time performance of such provision shall be due shall involve transcending the maximum amount of interest prescribed by law then, ipso facto, the obligation to be fulfilled by the Guarantor shall be reduced to the maximum limit of interest authorized by law,. . ."

The original loan transaction of which the Guaranty agreement was a part involved $2,790,000, and was secured by a Deed of Trust on real property being used for residential purposes, and by assignments of lease rentals to be generated from the apartment project on the property.  All parties involved were sophisticated businessmen and lenders.  The inclusion of the savings clause evidenced an express intent to structure the entire transaction so as to avoid usurious interest.

Under these circumstances, we treat the erroneous statements in the demand letters and in the Original Complaint as being

automatically remedied by virtue of the savings clauses in the underlying documents.  See, Federal Deposit Insurance Corp. v. Claycomb, 945 F.2d 853, 860-61 (5th Cir. 1991) and Woodcrest Associates, Ltd. v. Commonwealth Mortgage Corp., 775 S.W.2d 434, 437-39 (Tex. App.--Dallas 1989, writ denied).

### C.    USURY PENALTY AND THE RTC

Finally, the defensive remedies asserted by Guarantors are punitive in nature under Texas law.  Steves Sash & Door Co. v. Ceco Corp., 751 S.W.2d 473, 476 (Tex. 1988).   In Federal Deposit Insurance Corp. v. Claycomb, supra., this Court has previously held that claims against the FDIC for usury under the Texas law cannot be asserted because, "such application could have no deterrent affect and would only serve to punish innocent creditors of the failed institution by diminishing available assets."  Id. at 861. The RTC is the successor agency to the FDIC and we here extend the holding in Claycomb as applicable to the RTC in this case.

### CONCLUSION

For all of the above and foregoing reasons, the judgment of the district court is AFFIRMED.

Reavley, Circuit Judge, concurs in parts B and C only.

8