United States Court of Appeals,

Fifth Circuit.

No. 91–2841.

FEDERAL SAVINGS & LOAN INSURANCE, receiver of Americity Federal Savings Bank, Plaintiff–Appellee,

v.

Nicholas K. KRALJ, Defendant–Appellant.

Aug. 17, 1992.

Appeal from the United States District Court For the Southern District of Texas.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and KENT, District Judge.[*]

EMILIO M.ARZA, Circuit Judge:

After Nicholas K. Kralj defaulted on a promissory note, Americity Federal Savings Bank brought suit to recover amounts due. Americity then moved for summary judgment. Kralj argued that the promissory note was usurious on its face and that the pleadings should have been amended to reflect a reduction in the debt resulting from the foreclosure of the property securing the promissory note. The district court granted Americity's motion for summary judgment. Finding no error, we affirm the district court's summary judgment.

I

The facts of this case are uncontested. Kralj and two others[1] executed a promissory note in favor of Tesoro Savings & Loan Association, in the principal amount of $3,258,185. The promissory note was due and payable on or before eighteen months. As security, Kralj executed a Deed of Trust granting Tesoro a security interest in certain real property ("the Property").

Kralj entered into a renewal, extension and increase of the loan from Tesoro in the principal

[*]District Judge for the Southern District of Texas, sitting by designation.

[1]George Zapalac and Robert Tesch were the other two parties who executed the note with Kralj in favor of Tesoro. Zapalac and Tesch participated in this suit separately from Kralj.

amount of $3,900,000. Kralj promised to pay Tesoro the principal sum of $3,900,000 with interest, on or before one year. This promissory note provided that interest would be calculated on the basis of the actual number of days elapsed over a year composed of 360 days.

Tesoro then entered into a second renewal and modification promissory note ("the Note") with Kralj in the amount of $4,350,000. Interest under the Note was to be due and payable quarterly as it accrued, beginning October 1, 1986, and continuing regularly until December 31, 1987, when the entire principal and interest then remaining unpaid would become due and payable.[2] Interest on the Note was calculated on a daily rate equal to 1/360th of the annual percentage rate provided in the Note. The Note also provided that all past due interest and principal would bear interest at the maximum legal rate.

Kralj failed to make the quarterly interest payments and the principal payments provided for under the Note. Tesoro notified Kralj that the Note was due and payable. Kralj failed to pay, and Tesoro filed suit in state court to recover the amounts allegedly due on the Note. Tesoro bought the collateral, which secured Kralj's loan, at a foreclosure sale. Tesoro's bid of $1,285,000 was the successful bid, and this amount was applied to the outstanding balance due on the Note.

Tesoro was subsequently declared insolvent and the FSLIC was appointed as receiver. The FSLIC and Americity then entered into an acquisition agreement whereby Americity acquired most of Tesoro's assets, including the Note. After the FSLIC removed the case to federal court, Americity intervened as the current owner of the Note.[3] In its original complaint in intervention ("the complaint"), Americity alleged it was due the sum of $4,166,487.99 as the amount of principal and interest due and owing on the Note as of May 16, 1989. In response to Kralj's interrogatories,

---

[2]The intervening interest payments were to be made on January 1, 1987, April 1, 1987, July 1, 1987, and October 1, 1987.

[3]As a result, Kralj's allegations involve both Tesoro and Americity.

Americity stated that this amount consisted of a principal balance of $3,608,569.02, plus interest which was accruing at a rate of $1,804.28 per day.

Kralj subsequently filed a counterclaim alleging statutory and common law usury. Americity concedes that its original calculation was based on an 18% annual rate calculated over a 360–day year, which results in an effective annual rate of 18.25%,[4] which is greater than the maximum allowed by law.[5] Americity asserts, however, that this calculation was made by one of its employees solely to respond to Kralj's interrogatories requesting information about amounts listed in the complaint,[6] and that the use of the 360–day year was contrary to its practice which is to calculate default interest based on a 365–day or 366–day year. Americity amended its complaint and answers to interrogatories to represent a demand for interest at a lawful rate.[7]

Americity subsequently moved for summary judgment, and the district court granted the motion, holding that statements in pleadings and interrogatories cannot constitute a usurious demand for interest, that the Note was not usurious on its face, and that the alleged failure to give adequate consideration at the foreclosure sale was not a violation of usury laws. On appeal, Kralj argues, among other things, that pleadings and answers to interrogatories can constitute an excessive demand for interest, and that the district court erred in holding that the Note was not usurious on its face.

II

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to

---

[4]*See infra* note 13 and accompanying text.

[5]Although the parties do not specifically address this point, they agree that the interest rate exceeded 18%, as set forth in Tex.Rev.Civ.Stat.Ann. art. 5069–1.07.

[6]The employee, Cynthia Brown, stated that she did not normally calculate interest due on notes originated by Americity, but calculated the interest solely for purpose of answering the interrogatories.

[7]Kralj's allegations of usury are based on Americity's initial calculations regarding the interest rate.

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the summary judgment, we apply the same standard as the district court. *See Waltman v. Int'l Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989) (citation omitted); *Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 548–49 (5th Cir.1989) (citations omitted). We review all issues de novo. *Wilson v. Job, Inc.,* 958 F.2d 653, 656 (5th Cir.1992) (citation omitted). The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To that end, we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986) (citation omitted). Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

## A

Americity provided the unlawful interest rate information in its complaint and in its initial answers to Kralj's interrogatories. Kralj argues that Americity's pleadings and answers to interrogatories demanding unlawful interest constitute a charge of usurious interest under Texas' usury statute. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (West 1987).[8] We disagree.

---

[8]Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 provides:

> (1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle ... shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court ... provided that there shall be no penalty for any usurious interest which results from an accidental and bona fide error.

> (2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further than any such person violating the provisions of this section shall be guilty of a misdemeanor and upon

In *Gibraltar Sav. v. LDBrinkman Corp.,* we indirectly noted that a demand for interest in a pleading does not constitute a charge of interest for purposes of the Texas usury laws unless the underlying agreement is itself usurious. *See Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275, 1296 n. 26 (5th Cir.1988), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).[9] In *LDBrinkman,* we also noted the district court opinion in *Fibergrate Corp. v. Research–Cottrell, Inc. Id.* at 1296, *citing Fibergrate Corp. v. Research–Cottrell, Inc.,* 481 F.Supp. 570 (N.D.Tex.1979).

The district court in *Fibergrate* held that the Texas usury statute is penal in nature and must be strictly construed. *See* 481 F.Supp. at 571. The district court also held that under the Texas usury statute "a claim for interest as damages is alone not a charge of interest within the meaning of the statute." *Id.* at 572.[10]

Recently, in *George A. Fuller Co. v. Carpet Serv., Inc.,* the Supreme Court of Texas held that "a demand for prejudgment interest contained in a pleading does not make a pleader liable for

---

conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

[9]As authority for this proposition, *LDBrinkman* cites *Danziger v. San Jacinto Sav. Ass'n,* 732 S.W.2d 300, 305–06 (Tex.1987) (Gonzalez, J., concurring) ("This court has not directly faced this issue [whether pleadings alone can constitute the charging of usurious interest].... The better rule is that the filing of a petition may constitute the charging of usurious interest *only* when the underlying agreement sought to be enforced is usurious....") (emphasis in original).

[10]The *Fibergrate* court stated:

[C]onstruing a claim asserted only in a pleading filed in a law suit as an interest charge triggering the draconian penalties of usury would do little to serve any reasonable purpose of the statute. There is little risk of overreaching or coercion because the sum claimed would never be payable absent judicial approval.... [T]his proffered construction would exalt form over substance and attach a heavy penalty to a pleading error contrary to the policy of both *state and federal rules of procedure* that amendments ought to be freely allowed to avoid injustice.

*Fibergrate,* 481 F.Supp. at 572 (emphasis added).

statutory usury penalties if the pleading seeks the recovery of unlawful prejudgment interest."[11] *Carpet Services* distinguished the purpose of the usury laws, which is to correct abusive practices in consumer and commercial credit transactions, and the purpose of pleadings, which is to notify a party of the issues at trial. *Id.* at 605. *Carpet Services* stated that a claim for prejudgment interest, which arises from the judicial process—and not from a commercial credit transaction—should be treated as part of the judicial process, rather than a possible violation of the usury laws. *Id.*

The *Carpet Services* court did not decide whether pleadings that claim other types of interest based on underlying documents that are usurious may themselves constitute a usurious charge of interest. *Id.* at 604 n. 1. *Carpet Services* offers no explicit guidance to a court faced with a pleading that demands interest, other than prejudgment interest, at a rate in excess of the maximum allowed by law, but which is based on an underlying document that is not itself usurious. Given the policy arguments relied on by *Carpet Services,* we believe the *Carpet Services* holding is consistent with *LDBrinkman.* That is, if the underlying documents are not usurious, then irrespective of the type of interest demanded in the pleadings, imposing a penalty for usury, based solely on a demand made in a pleading or interrogatory answer, does nothing to fulfill the purpose of usury laws, which is to correct abusive practices in consumer and commercial credit transactions. *See Carpet Services,* 823 S.W.2d at 605.

Another recent Fifth Circuit case echoes this reasoning. *First S. Sav. v. First S. Partners, II, Ltd.* involved a claim by the guarantors of a note that the note holder had committed usury by charging interest at a higher rate than allowed by law. *See First S. Sav. Ass'n v. First S. Partners, II, Ltd.,* 957 F.2d 174, 176–77 (5th Cir.1992). In holding that the demand letter and prayer for relief in the complaint were not usurious, we noted the *Carpet Services* decision and stated that it "clearly disposes of the Guarantors' contention that "charging of usurious interest' can occur in pleadings."

---

[11]823 S.W.2d 603, 606 (Tex.1992).

*Id.* at 177.[12]

In any event, after discovering the error in its calculations regarding the interest rate, Americity timely amended its complaint and its answers to interrogatories such that neither demanded any type of interest in excess of the lawful rate. Thus, we hold that neither Americity's pleadings nor its answers to interrogatories constitute an unlawful charge of interest for purposes of the Texas usury laws.

B

Kralj also contends that the Note is usurious on its face. Kralj reasons that charging 18% based on a 360–day year results in a rate in excess of 18%,[13] thereby making the Note usurious. He further argues that the Note provided a contingency by which the holder could receive more than the

---

[12]On appeal, Kralj relies upon *Tyra v. Bob Carroll Constr. Co.* and *Danziger v. San Jacinto Sav. Ass'n* to support his arguments to the contrary. These cases were decided prior to the Texas Supreme Court decision in *Carpet Services* and this court's decision in *First South.* Furthermore, *Tyra* involved an abandoned pleading. The Supreme Court of Texas assumed there was a charge of interest, but found that Carroll had made an accidental and bona fide error regarding the interest rate. *See Tyra v. Bob Carroll Constr. Co.,* 639 S.W.2d 690, 691 (Tex.1982). Thus, the court did not directly discuss a situation similar to this case. Similarly, in *LDBrinkman,* we noted that *Danziger v. San Jacinto Sav. Ass'n* did not directly address the issue of whether pleadings alone can constitute the charging of usurious interest. *See LDBrinkman,* 860 F.2d at 1296 n. 26.

[13]*See supra note* 5 and accompanying text. Americity's answers to the interrogatories explained that the principal balance due after foreclosure was $3,608,569.02 and that the interest Kralj was required to pay each day was $1,804.28. Kralj demonstrates how this figure results in an interest rate above 18%:

a. $3,608,569.02 × .18 = $649,542.42 ÷ 360 = $1,804.28

b. $1,804.28 × 365 = $658,562.20 ÷ $3,608,569.02 = .1825

Americity amended its answers to interrogatories, to the following, thereby resulting in an interest rate below 18%:

a. $3,608,569.02 × .18 = $649,542.42 ÷ 365 = $1,779.56

b. $1,779.56 × 365 = $649,539.40 ÷ $3,608,569.02 = .1799

maximum rate of interest allowed by law, thereby making the Note usurious on its face.[14] Americity counters that, although one clause of the Note may charge excessive interest, the savings clause in the Note defeats a construction of the contract that would violate Texas usury laws. We agree with Americity.

The Note provides that interest is to be calculated at an annual rate "equal to the lesser of (a) the Maximum Rate permitted by applicable law or (b) the sum of two percent (2%) over the Prime Rate...." The clause providing for interest to be calculated at a daily rate equal to 1/360th of the rate provided for in the Note appears in a separate paragraph defining the term "prime rate" and states:

> "Prime Rate" as used herein shall mean at any time the rate per annum announced by the Chase Manhattan Bank of New York at its Principal Office as its prime commercial lending rate.... Interest on this note shall be calculated on a daily rate equal to 1/360th of the annual percentage rate herein provided.

Another provision providing for past due principal and interest makes no mention of the 360–day calculation period, but specifies that interest shall be at the maximum rate permitted by law, or if no maximum rate exists, then at a rate equal to 5% above the prime rate.

Significantly, the Note contains a savings clause which provides that:

> Notwithstanding anything to the contrary in this Note or in any other agreement entered into in connection herewith ... it is agreed that the aggregate of all interest and any other charges constituting interest, or adjudicated as constituting interest, and contracted for, chargeable or receivable under this Note or otherwise in connection with this loan transaction shall under no circumstances exceed the maximum amount of interest permitted by applicable law.

As we have noted, Texas state courts have construed savings clauses to defeat an interpretation of a contract that would violate the usury laws. *See Mack v. Newton,* 737 F.2d 1343, 1371 (5th Cir.1984), *citing Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937), *Tanner*

---

[14]Kralj cites *Najarro v. SASI Int'l, Ltd.,* 904 F.2d 1002, 1010 (5th Cir.1990) ("[A] contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts") (quotation omitted).

*Development Co., v. Ferguson,* 561 S.W.2d 777 (Tex.1977), *Spanish Village, Ltd., v. American Mortgage Co.,* 586 S.W.2d 195 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.) (other citations omitted). "The mere presence of such a clause, however, will not rescue a transaction that is necessarily usurious by its explicit terms." *Woodcrest Assocs., Ltd. v. Commonwealth Mortgage Corp.,* 775 S.W.2d 434, 438 (Tex.App.—Dallas 1989, writ denied) (citations omitted). To determine the effect of such a clause, we construe "the terms of the savings clauses as a whole and in light of the circumstances surrounding the transaction." *Id.*

Kralj argues that both Tesoro and Americity charged interest at a usurious rate, and had a policy of charging post-default interest at a usurious rate. Thus, Kralj asserts that the actions and practices of Americity create a genuine issue of material fact as to whether the Note, by its explicit terms, provides for a usurious charge of interest. The Supreme Court of Texas has stated that "a lending institution's practice of charging a per diem rate of interest based on a 360–day year cannot be characterized as an "accidental or bona fide error.' " *Lawler v. Lomas & Nettleton Mortgage Investors,* 691 S.W.2d 593, 596 (Tex.1985) (citation omitted).

Nonetheless, the district court concluded that neither Tesoro or Americity charged interest at a usurious rate. The evidence establishes that interest was charged at the rate of 2% above the prime rate, and that the bank's computers were never programmed to charge interest at the maximum rate of 18%. The only evidence, contained in a computer printout attached to Cynthia Brown's affidavit, showed interest calculated at 18%, and this is insufficient to create a genuine issue of material fact. *See Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512 (the mere existence of a scintilla of evidence in support of plaintiff's position is insufficient). Thus, we hold that the savings clause remedies any problem with the clause in the note containing reference to calculations regarding the 360–day year.[15]

---

[15]*Cf. First S. Sav. Ass'n v. First S. Partners II, Ltd.,* 957 F.2d 174, 178 (5th Cir.1992) (erroneous statements in demand letters and original complaint remedied by virtue of savings clauses in underlying documents); *Federal Deposit Ins. Corp. v. Claycomb,* 945 F.2d 853,

## C

In two related arguments, Kralj contends that the district court erred in holding for Americity on Tesoro's alleged failure to give Kralj credit for the value of the Property received at foreclosure.

### (1)

Kralj maintains that—by failing to give Kralj an offset equal to the amount it paid for the property securing the Note at foreclosure, and continuing to charge interest on the entire principal amount due prior to foreclosure—Tesoro committed usury. Kralj argues that Tesoro demanded $3,956,552.90, as the unpaid principal amount of the loan; $724,241.56, in accrued and unpaid interest on the unpaid principal amount of the loan; and $112,295.25, in accrued and unpaid interest on past due installments of principal and interest. Kralj alleges that Tesoro foreclosed on the property and received $1,285,000, but failed to give Kralj credit for this amount.

Kralj, however, fails to direct us to any part of the record which indicates that, after foreclosure, Tesoro actually charged Kralj interest based on the entire principal amount due prior to foreclosure, or that Tesoro ever charged interest at a usurious rate (excluding the demands made by Tesoro and Americity in their pleadings). Kralj must show that Tesoro did not apply the proceeds to the total balance of the notes and that interest has continued to accrue on the entire balance, and that such action in applying the proceeds resulted in a usurious charge of interest. *See Rent Am., Inc. v. Amarillo Nat'l Bank,* 785 S.W.2d 190, 196–97 (Tex.App.—Amarillo 1990, writ denied) (bank's pleading did not charge uncredited offset as interest, but merely failed to show its credit to the principal balance; alleged delay in applying proceeds did not result in usurious charge of interest). Kralj has not carried this burden of proving a charge of usurious interest.

### (2)

---

860–61 (5th Cir.1991) (savings clauses set forth in loan documents defeat any usury defense under Texas law), *cert. denied,* —— U.S. ——, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992).

In a related argument, Kralj argues that Tesoro committed usury by failing to give him an offset equal to the full value of the Property at the time of foreclosure. Kralj's argument is based on the contention that Tesoro gave grossly inadequate consideration for the Property. According to Kralj, although the Property had a fair market value of at least $3,500,000, Tesoro bid only $1,285,000. Tesoro then owned the Property, which was worth $3,500,000, but Kralj was given credit for only $1,285,000.

Similar to Kralj's prior argument, he has failed to cite to any part of the record to support this argument. The district court found that Kralj did not present any summary judgment evidence to establish that Tesoro bid less than the fair market value at the foreclosure—nor do we. As the district court succinctly noted, "[i]n the absence of irregularity that caused or contributed to the property being sold for a grossly inadequate price, mere inadequacy of consideration is not grounds for setting aside a trustee's sale." *See Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat'l Ass'n,* 786 S.W.2d 386, 388 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (citations omitted); *Savers Fed. Sav. & Loan Ass'n v. Reetz,* 888 F.2d 1497, 1502–03 (5th Cir.1989) (inadequacy of consideration received on the foreclosure sale cannot alone invalidate an otherwise valid deed of trust nonjudicial foreclosure on real estate, absent some irregularity that caused the property to be sold for a grossly inadequate price) (citations omitted).[16] No such irregularity has been pointed out, and we reject Kralj's argument to the contrary.

D

Kralj next argues that an action for unconscionable conduct under the Texas Deceptive Trade

---

[16]*See also Tankersley v. Universal Sav. Ass'n,* No. 01–90–00394–CV, 1991 WL 207163, at *3, 1991 U.S.App. LEXIS 2557, at *6–10 (Tex.App.—Houston [1st Dist.] Oct. 17, 1991), *noting Greater Southwest* holding, as modified by recent amendment to property code, Tex.Prop.Code.Ann. § 51.003, effective April 1, 1991, which states that, after a foreclosure sale of real property, parties against whom recovery of a deficiency is sought may ask the court to determine the fair market value of the property sold. If the court determines that the fair market value is greater than the foreclosure sale price, the debtor is entitled to an offset against the deficiency in the amount by which the fair market value (less the amount of any lien on the real property that was not extinguished by the foreclosure) exceeds the sale price.

Practices–Consumer Protection Act ("DTPA")[17] can be maintained when grossly inadequate consideration is given at a foreclosure sale, even though there is no other irregularity in the foreclosure sale.

We do not reach this argument because, as we have noted, Kralj has failed to show how the district court's conclusion—that the consideration received at the foreclosure sale was not inadequate—is incorrect. Thus, Kralj's argument lacks foundation. In any event, only "consumers" may complain of unconscionable acts under the Deceptive Trade Practice Act. *See Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex.1980). A consumer is defined as one who seeks or acquires by purchase or lease, any goods or services. *See* Tex.Bus. & Com.Code Ann. § 17.45(4) (West 1987). Money is not a good and seeking its extension in the form of credit is not a service. *See Riverside,* 603 S.W.2d at 174–75. "Generally, a party who seeks or acquires money in a transaction is not necessarily a consumer." *Resolution Trust Corp. v. Westridge Court Joint Venture,* 815 S.W.2d 327, 332 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (citation omitted). In this case, Tesoro, not Kralj, was the purchaser of the Note at the foreclosure sale. Thus, Kralj lacks standing to assert a claim that Tesoro's failure to bid or to receive the alleged fair market value at the foreclosure sale was unconscionable under the DTPA. *Id.* (stating that because appellees were not purchasers, they could not complain that the price obtained at the foreclosure sale violated the DTPA).

E

Finally, the parties disagree about the district court's holding that the Note was

---

[17]*See* Tex.Bus. & Com.Code Ann. § 17.50 (West 1987 & Supp.1992) provides:

> (a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

\* \* \* \* \* \*

> (3) any unconscionable action or course of action by any person....

non-negotiable, because it contained a variable interest rate.[18]

The district court held that the federal holder in due course doctrine[19] was not available to Americity, as successor to the FSLIC, because the Note was a non-negotiable instrument, *citing Sunbelt Sav., FSB v. Montross,* 923 F.2d 353 (5th Cir.1991). In *Montross,* a panel of this court stated that the federal holder in due course doctrine does not protect the FDIC or its successors from personal defenses asserted by the makers of a non-negotiable instrument. *Sunbelt Sav.,* 923 F.2d at 358. This holding was clarified in *Resolution Trust Corp. v. Montross,* in which the en banc court stated that it takes "no position on the effect of the variable interest rate on the negotiability of the note." *Resolution Trust Corp. v. Montross,* 944 F.2d 227, 228 (5th Cir.1991) (en banc).

The Supreme Court of Texas has recently decided this question. In *Amberboy v. Societe de Banque Privee,* in answer to a question certified by this court in *Ackerman v. Federal Deposit Ins. Corp.,* 930 F.2d 3 (5th Cir.1991), the Supreme Court of Texas held that a "promissory note requiring interest to be charged at a rate that can be determined only by reference to a bank's published prime rate is a negotiable instrument as defined by the Texas Uniform Commercial Code." *Amberboy v. Societe de Banque Privee,* 35 Tex.Sup.Ct.J. 621, —— S.W.2d —— (April 15, 1992). The Court reasoned that variable rate notes which contain a provision for interest to be paid at a variable rate, readily ascertainable by reference to a bank's published prime rate, are compatible with the Texas Business and Commerce Code's objective of commercial certainty. *Id.* at 623, —— S.W.2d at ——. Commercial certainty serves the purpose of the law of negotiable instruments, which is to make the instrument the functional equivalent of money. *Id.*

---

[18]The note provides that interest accrues at 2% over the rate per annum announced by the Chase Manhattan Bank of New York at its principal office—the variable interest rate requires reference to an outside source for the calculation of interest.

[19]The federal holder in due course doctrine bars the makers of promissory notes from asserting "personal" defenses against both the FDIC and subsequent holders in connection with purchase and assumption transactions involving insolvent banks. *See Campbell Leasing, Inc. v. Federal Deposit Ins. Corp.,* 901 F.2d 1244, 1248 (5th Cir.1990) (citations omitted).

## III

For the foregoing reasons, we AFFIRM.